227 So.2d 442

**Garlon TYLER**

v.

**STATE.**

**8 Div. 8.**

Court of Criminal Appeals of Alabama.

Oct. 7, 1969.

Wm. H. Rogers, Moulton, for appellant.

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

CATES, Judge.

Tyler was tried and convicted in the Lawrence County Court for possessing prohibited liquors and the court set his punishment at a fine of $50.00. From this judgment of conviction and fine, this appeal is submitted.

■ The judgment entry here is quite similar to the entry in Simpson v. State, 42 Ala.App. 30, 151 So.2d 255, where this court dismissed the appeal because there were no words of adjudication. However, here we consider the expression "finds the defendant guilty as charged and fixes his punishment at a fine of $50.00" suffices.

The following affidavit was sworn out by Billy Chamness, a deputy sheriff of Lawrence County, before J. L. Weatherwax, a justice of the peace, in order that a search warrant could be issued to search the appellant's property for prohibited liquors or beverages:

"STATE OF ALABAMA  
"COUNTY OF LAWRENCE }

"BEFORE ME J. L. Weatherwax THIS DAY PERSONALLY APPEARED Billy Chamness who, after being by me first duly sworn and examined upon his oath, doth say that he has probably cause for believing and does believe, based upon investigation, surveillance, detection and the information of an informer, whose information in the past, has been reliable, that Garland Tyler HAS IN HIS possession, or under his domain or control, contrary to law, prohibited liquors or beverages, a more specific description of which is not obtainable, that said liquors or beverages are contraband within the meaning of the law and are kept, stored, or possessed by the said Garland Tyler in violation of the law upon the following premises, to-wit: The principal dwelling house and the outbuildings lying within the curtilage of same, more specifically located by the following description of direction; From Moulton go West on Hy 24 to road known as Aubrey Cameron rock road. Turn South and go past church and cross creek, turn West on rock road and go to first rock road leading south, then go to first house on right hand side of road, a white house with old cars in yard.

"Sworn to and subscribed before me on this the 7th day of May, 1968

J. L. Weatherwax     "Billy Chamness  
Justice of the Peace     AFFIANT"

Based on this affidavit, Mr. Weatherwax issued a daytime search warrant

Officer Chamness testified that, prior to his making the affidavit before Mr. Weatherwax, he and Deputy Hyram Cook had caught two men coming out of appellant's house with some whiskey and that later they caught four boys who had bought some beer and drank it at appellant's house. These facts were related to Mr. Weatherwax during the making of the affidavit.

Upon arriving at the Tyler place with the search warrant, the officers found appellant outside in the yard and showed him the warrant. Tyler, after reading the warrant, refused to unlock the door to the house so the officers "kicked the door down" and searched the premises. During this search, twenty-five (25) twelve ounce (12 oz.) cans of Schlitz beer were found in the house.

I

There was some dispute as to the time[1] of the search. The officers testified that

[1] Since the officers were authorized by the search warrant to conduct the search "in the daytime" only, the warrant could be executed at any time between eight o'clock in the morning and six o'clock in the afternoon. Code 1940, T. 29, § 220.

the search was conducted before 6:00 P.M., Central Standard Time. Witnesses for the defense testified that the search did not take place until 6:45 P.M., Central Daylight Saving Time.

In Weldon v. State, 39 Ala.App. 286, 97 So.2d 825, we said per Harwood, P. J.:

"The defendant having objected to the introduction of the warrant on the ground that it was not executed before 6 o'clock in the afternoon, the burden was cast upon the State to show that it was timely executed."

See also Edwards v. State, 42 Ala.App. 307, 162 So.2d 894.

■ This search warrant expressly limited its execution to daytime. This specification means that where the defendant objects to the introduction of such a warrant because of nocturnal execution, the burden is cast on the State to show timely execution. *Weldon,* 39 Ala. 286, 97 So.2d 825; *Edwards,* 42 Ala.App. 307, 162 So.2d 894.

For the purpose of execution of a liquor search warrant of a private residence, Code 1940, T. 29, § 220 specifies "daytime" as the hours "between 8 o'clock in the morning and 6 o'clock in the afternoon."

Code 1940, T. 1, § 12 provides, in part:

"* * * In designating the hours of the day, the time used shall be that of the ninetieth degree of longitude west of Greenwich, otherwise known as standard railroad central time."

With respect to this latter section, the Attorney General ruled (Attorney General Reports, January—March 1942, p. 153) that the Act of Congress, January 10, 1942, establishing daylight saving time for World War II, in effect established standard time within the meaning of the above-quoted provision of § 12.

In 1966 Congress passed the "Uniform Time Act" which provides for an advancement of one hour beyond standard time on the last Sunday of April of each year until 2:00 A.M. of the last Sunday of October of each year.

This statute admits of no exception by action of a state legislature unless the exemption is for the entire state. In Mass. State Grange v. Benton, 1 Cir., 10 F.2d 515, it seems conceded that the power of Congress to specify standards of time is derived from the Federal Constitution, particularly Art. I, § 8, Cl. 5 (standards of weights and measures) and the commerce clause (Art. I, § 8, Cl. 3), which latter power seems to be implicit in our Legislature's reference in T. 1, § 12 of the Code, supra, in referring to "standard railroad central time." See the above-cited Attorney General's opinion for the history of "railroad time."

■ Of the new Federal Time Act, the Supreme Court of North Dakota, in State ex rel. Schirado v. Frye, N.D., 157 N.W.2d 830, said:

"This court is further going to consider the mandatory provision of the Uniform Time Act of 1966 as it applies to State conformance to federally established time zones during the daylight saving time period, because of the broad scope of the certified questions of law. This particular provision, namely, Section 260a of the Uniform Time Act of 1966, sets forth the period of daylight saving time which commences on the last Sunday in April of each year and ends on the last Sunday in October of each year. Such provision must of necessity be followed by the various States unless a State exempts itself from the provisions of this section. * * *"

We take judicial notice that the Supreme Court of Alabama uses daylight time in holding its sessions.

■ It is clear that the search warrant in question was executed on May 7, 1968. The officers, in making their return thereon, did not indicate the hour of its execu-

tion so that under the *Weldon* case, supra, the state's proof in parol must need be clear and unequivocal to bring the execution within the time permitted by statute. The state obviously pitched its case on the theory that the Federal Uniform Time Act did not apply. Several defense witnesses stated that the time of execution was 6:45 P.M., Central Daylight Saving Time. Hence, since the deputy sheriffs were questioned only as to a time before 6:00 o'clock Central Standard Time, the prosecution failed to show a valid execution of the warrant. It, therefore, follows that the search was illegal.

## II

Appellant claims that since the State failed to prove that the beer found in Tyler's house contained alcohol, the evidence was insufficient to support the conviction. The evidence showed, in effect, that the officers while searching the house found twenty-five (25) twelve ounce (12 oz.) cans of Schlitz beer.

In Kilpatrick v. State, 38 Ala.App. 256, 81 So.2d 926, the defendant was convicted of illegal possession of prohibited beverages. Officers testified that they found "eleven cans of beer" or "eleven cans of Miller's High Life beer." This court, per Harwood, P. J., held:

"Certainly in every day language a reference to 'eleven cans of beer' can only rationally be deemed to mean that the cans contained a beverage, and such reference did not mean empty beer cans.

"The appellant himself testified as to the beer found by the officers. His testimony was directed toward a denial of any knowledge of the beer, and not toward establishing that the cans found were only empty cans.

"This being so, the labels on the cans showing them to be Miller's High Life beer were competent evidence as to the contents, making such issue a question of fact for the jury, and was sufficient to support the verdict in this aspect.

Woods v. State ex rel. Key, 247 Ala. 155, 22 So.2d 901."

See also Turner v. State, 14 Ala.App. 29, 70 So. 971, where the State proved a sale of "Schlitz" beer by the defendant and this proof was deemed sufficient to carry the case to the jury.

■ Therefore, evidence that twenty-five cans of Schlitz beer was found in Tyler's house was sufficient to support a conviction.

## III

Appellant claims that the description in the search warrant describing the premises to be searched did not meet the particularity required by §§ 102 and 105, T. 15, Code 1940. The description set out in the warrant is the same as the description in the affidavit appearing at the first of this opinion.

■■ We feel that the description here in the affidavit and the search warrant was specific enough to enable the officers to locate the premises with reasonable certainty and definiteness. It is enough if the description is such that the officer can with reasonable effort ascertain and identify the place intended, or if a prudent officer should thereby be able to locate the property definitely and with reasonable certainty from the face of the warrant. The description must be such that any person familiar with the locality can by inquiring identify the premises described. 79 C.J.S. Searches and Seizures § 81, p. 888. These requirements were met in the case at bar.

## IV

Appellant next claims error in that the affidavit, upon which the issuance of the search warrant was based, is too conclusory and is completely devoid of underlying facts showing probable cause.

■ The affidavit which Officer Chamness submitted to Mr. Weatherwax, the Justice, stated that he "has probable cause for believing and does believe, based upon

information, investigation, surveillance, detection and the information of an informer, whose information in the past has been reliable * * *." The affiant says information without saying what he has been informed of; investigation without saying what he did to investigate; surveillance without what activities he watched; detection without a hint as to what he detected; and finally information without the details of what the informer said. The affidavit of instant concern, then, is, as to the source of probable cause, conclusory only and, therefore, void in that aspect. See Jones v. United States, 362 U.S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 as to how to compose a narrative affidavit.

■ An affidavit which recites the affiant's belief of the matters contained therein, without supporting facts or circumstances upon which a finding of probable cause could be based, is insufficient to support a search warrant. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159. In Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, the propriety of the issuance of a search warrant is deemed to be a due process question.

In *Aguilar*, supra, a search warrant was issued upon an affidavit of police officers who swore that they had "received reliable information from a credible person and do believe" that narcotics were being illegally stored on the described premises. The Supreme Court, after recognizing that the requirement of probable cause can be satisfied by hearsay information, held that the affidavit was inadequate because (1) it failed to set forth any of the "underlying circumstances" necessary to enable the magistrate independently to judge the validity of the informant's conclusion that the narcotics were where he said they were

and (2) the officers did not attempt to support their claim that their informant was "credible" or his information "reliable."

The Alabama Supreme Court has stated the rule for issuing a search warrant to be that a magistrate must have sufficient evidence before him to support a finding of probable cause. Clenney v. State, 281 Ala. 9, 198 So.2d 293. See also Code 1940, T. 15, § 103, and T. 29, § 214. The court added that, apparently, it is not necessary that all the evidence before the magistrate be stated in the affidavit. However, *Aguilar* and other Supreme Court decisions seem to indicate that enough evidence must be stated in the affidavit to support the Constitutional requirement of probable cause for issuing the search warrant or such warrant is insufficient. See Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637.

In Brandies v. State, 44 Ala.App. 648, 219 So.2d 404, we volunteered that sworn statements before the issuing magistrate must be reduced to writing. Certainly this is the requisite of our statute at least as to the gist of the testimony of each witness who appears before the magistrate.[2]

Mr. Weatherwax, the justice of the peace who issued the search warrant, was called by the defense after the State had concluded its case. The following is an excerpt of his testimony (R. 54–57):

BY MR. PETTUS:

Q  All right, sir. And were you satisfied of the existence of grounds for the application?

A  Yes, sir.

\*   \*   \*   \*   \*   \*

Q  Or were you satisfied that there was probable cause to believe the existence of those grounds for the application?

A  I certainly was or I wouldn't have issued it.

2.  Code 1940, T. 15. § 103 provides:
    " * * * and the depositions must set forth facts tending to establish the grounds of the application, or probable cause for believing that they exist."

Q Yes, sir. I will ask you if you were not informed at the time that affidavit was made, that on the very evening before that, these officers had stopped four young men or boys coming from this defendant's home and that they were informed by those four boys that—

MR. ROGERS: Your Honor, I am going to object to this line of questioning that what was stated was supposed to be reduced to writing and put in the affidavit and the affidavit speaks for itself.

THE COURT: Well, Mr. Weatherwax testified awhile ago, as I remember, that he didn't put everything in the affidavit that was told to him, and evidently they had to give him some information for him to issue the search warrant. I am going to overrule.

MR. ROGERS: We take exception.

Q They were informed that they had beer and got beer from this defendant and drank it in his home, or in substances to that?

A Yes, sir, they told me that they had stopped—seems to me like they said two on one road and two or three or four on another road. They had taken two different approaches.

Q And that—

A And that they told them that.

\* \* \* \* \* \*

BY MR. ROGERS:

Q Mr. Weatherwax, do you know the name of any of these informers that said that they were stopped?

A As to what, now?

Q Do you know the names of any of these people that said that they were stopped?

A No, sir.

Q You didn't talk with any of them?

A No, sir, I didn't go into details with them, no, sir, but they did tell me, the officers did.

Q Now, Mr. Weatherwax, to clear up this point: You stated earlier that these men were under oath. Did you give them an oath? Did you tell these officers before they testified and you wrote it down, do you swear and affirm that the evidence you are about to give in this matter is the truth, the whole truth and nothing but the truth—

A I didn't give them the formal oath.

Q You did not give them a formal oath?

A I did not give them a formal oath.

The only evidence we can find in the case concerning credibility of the informants is that two men and four boys were arrested for the illegal possession of prohibited beverages or liquors and that they told police officers that the beverages or liquors had been purchased by them at the appellant's home. There is no evidence showing either that the information of these persons had, in the past, been reliable or, indeed, that they had even given information to officers in the past. The above-mentioned facts can hardly be enough to establish these informants' credibility.

V

Under *Brandies,* supra, *Aguilar,* supra, and *Spinelli,* supra, the conviction here must be reversed.

Though other evidence was laid before the issuing magistrate concerning probable cause for issuing the search warrant, it was not in deposition form (i. e. in writing) and thus, under Code 1940, T. 15, § 103, was not competent evidence on the trial of the general issue to bolster the issuance of a warrant.

The affiant must state evidence (i. e. factual details) other than hearsay,

to justify a conclusion (1) that the article to be searched for is where he says it is and (2) that the hearsay is reliable. *Clenney,* supra. No such other evidence was contained in the affidavit nor was it apparently, before Mr. Weatherwax, the issuing magistrate.

The search warrant was based on an insufficient affidavit and thus the search of Tyler's home was conducted illegally. The conviction must be reversed.

Reversed and remanded.

ALMON, J., recuses self.