296 So.2d 228

**In re Chester McKINNEY**

v.

**STATE of Alabama.**

**Ex parte Chester McKinney.**

**SC 486.**

Supreme Court of Alabama.

May 9, 1974.

Rehearing Denied June 6, 1974.

Ferris S. Ritchey, Birmingham, Robert Eugene Smith, D. Freeman Hutton, Atlanta, Ga., for petitioner.

William J. Baxley, Atty. Gen., George M. Van Tassel, Jr., Asst. Atty. Gen., and Francis A. Poggi, Jr., Sp. Asst. Atty. Gen., for the State.

FAULKNER, Justice.

This is a pornography case involving the sale of a magazine entitled "New Directions" after it had been judicially found to be obscene.

"New Directions" is published in North Hollywood, California by Jaybird Enterprises, Inc. The masthead states that it is a "cultural, scientific, educational, and sociological publication produced and distributed to illuminate the conviction that the unclothed human body is worthy of respect and deserving of increased acceptance in our culture . . . Subscription rates, $14.00 per year. Second-class postage paid in North Hollywood, California." A review of its pictures contained in the magazine introduced into evidence as an exhibit reveal photographs of nude men and women exposing their genital organs in a revolting manner; male kissing female body near her genital organ; female kissing male in a like manner; females shown with their legs spread-eagle apart exposing their genital organs; male kissing the female breast; male sitting over female with

his genital organ touching her mouth, and many more similar poses—the magazine contains 61 pages in all. After review of pictures of these grotesque nudes, a person of reasonable sensibilities will conclude that it is no wonder God made man and woman to wear clothes. Without them some are the most unattractive animals in His kingdom.

"New Directions" was one of a number of magazines declared to be obscene in a decree rendered by the Circuit Court of Mobile County on February 26, 1970, in an action styled, State of Alabama, ex rel Attorney General of Alabama, ex rel District Attorney of the 13th Judicial Circuit of Alabama v. The Magazine, "Jaybird U.S. A.", No. 16, Vol. 4, No. 4; The Magazine, "New Directions", No. 14, Vol. 4, No. 4, et al., Case Number 76399. Each of the magazines was determined to be mailable matter and each was declared to be contraband. There appears to be a typographical error in the style of the case which refers to No. 14, Vol. 4, No. 4 of "New Directions". The decree refers to No. 16, Vol. 4, No. 4.

On March 10, 1970, a State attorney accompanied by a State investigator, went to the Paris Bookstall, Birmingham, Alabama, a place of business operated by McKinney, and personally delivered a letter to McKinney informing him that "New Directions" had been judicially declared to be obscene. On March 31, 1970, these offi-cers returned to the Paris Bookstall and purchased the magazine, "New Directions" from McKinney. While there, and with McKinney looking on, and in the presence of the investigator, the State attorney "flipped" through the pages of the magazine. Afterwards, they left, and the investigator signed a complaint charging McKinney with violating Title 14, § 374(4), Code of Alabama 1940, Recompiled 1958,[1] by selling obscene material which had been judicially declared to be obscene. McKinney was convicted in a trial before a jury and was given the maximum sentence under the statute. Before retiring, the jury was charged by the court that the only issue of fact for them to decide involved the question of selling material judicially declared obscene as charged in the complaint.

McKinney appealed his conviction to the Court of Criminal Appeals. The appellate court affirmed the trial court without rendering an opinion. Upon his application for rehearing being denied, McKinney filed a petition for certiorari, alleging deprivation of constitutional rights; that this was a case of first impression. We granted certiorari.

Neither McKinney nor the State introduced evidence in the trial on the question of obscenity, vel non. McKinney raised that issue in a motion to quash the complaint which the trial judge overruled. A motion to exclude the evidence was also

1. § 374(4). Importation, sale or possession of obscene printed or written matter; penalties. —[1] Every person who, with knowledge of its contents, sends or causes to be sent, or brings or causes to be brought, into this state for sale or commercial distribution, or in this state prepares, sells, exhibits or commercially distributes, or gives away or offers to give away, or has in his possession with intent to sell or commercially distribute, or to give away or offer to give away, any obscene printed or written matter or material, other than mailable matter, or any mailable matter known by such person to have been judicially found to be obscene under this chapter, shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than one year, and may be fined not more than two thousand dollars for each offense, or be both so imprisoned and fined in the discretion of the court.

[2] Every person who, with knowledge of its contents, has in his possession any obscene printed or written matter or material, other than mailable matter, or any mailable matter known by such person to have been judicially found to be obscene under this chapter shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than six months, or may be fined not more than five hundred dollars for each offense, or be both so imprisoned and fined in the discretion of the court.

overruled by the trial court. The validity of the judgment of the Mobile Circuit Court was questioned by McKinney on objection to its introduction in evidence, first in the sense that he was not a party to the action, second that the State had to prove by affirmative evidence that the subject magazine was obscene in this trial.

The action in the Mobile Circuit Court was filed pursuant to the provisions of Act No. 856, § 5 through § 11, Acts of Alabama 1961, Vol. II. The court acting as trier of fact found the magazine to be obscene. The 1961 Act defines obscene to mean "lewd, lascivious, filthy and pornographic and *that to the average person, applying contemporary community standards, its dominant theme taken as a whole appeals to prurient interest.*" (Emphasis added.)

The Act passes the constitutional test laid down by United States Supreme Court decisions. Under Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, the court set out new guides to use in regulating obscene material. State offenses must be limited to works which:

1. Depict or describe sexual conduct which is specifically defined by applicable State law (as written or authoritatively construed) and

2. Taken as a whole, appeals to the prurient interest in sex and

3. Portrays sexual conduct in a patently offensive way, and

4. Taken as a whole does not have serious literary, artistic, political, or scientific value.

The guide for determining what is "patently offensive" or appeals to the "prurient interest" is to be "the average person" applying contemporary community standards. We construe "contemporary community standards" to encompass the State of Alabama. National standards are not required under *Miller*. While a trial court may empanel a jury in an advisory capacity to measure the essentially factual issues of "prurient appeal" and "patent offensiveness" by the prevailing "contemporary community standards" it is not constitutionally required. Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973). Furthermore, when the material itself is placed into evidence, "expert" State testimony as to its allegedly obscene nature, or other ancillary evidence of obscenity, is not constitutionally required. Kaplan v. California, 413 U.S. 115, 93 S. Ct. 2680, 37 L.Ed.2d 492 (1973).

Constitutional safeguards are provided in the Act for one charged with violating its provisions. Section 5 provides for the institution of proceedings for an adjudication in a Circuit Court. (While this section provides that the action shall be filed in a Court of Equity, under the Rules of Civil Procedure adopted by this court on July 3, 1973, there is now only one form of action known as a "Civil Action". Rule 2, Rules of Civil Procedure.) Section 6 of the Act provides the type of complaint to be filed and the allegations which the complaint shall contain. Section 7 provides that an order to show cause shall be issued and service of same, upon the res and the person charged. Section 8 gives the respondent the opportunity to file defensive pleadings and permits answer by amicus curiae. Section 9 provides for maximum promptness of the hearing commensurate with constitutional requirements, including due process, freedom of the press, and freedom of speech. The burden is on the State to prove obscenity, vel non, in the adjudication of same.

Section 12 provides,

"Any mailable matter which is sent or caused to be sent, brought or caused to be brought into this State for sale or commercial distribution, or which in this State is sold, exhibited or commercially distributed, given away or offered to be given away or offered to be given away by any person, with knowledge of the decree finding it to be obscene, or is in the possession of any such person with

intent to sell or commercially distribute or exhibit, or give away or offer to give away, is subject to the provisions of Section 4 of this Act."

We now decide the question of whether the Mobile Circuit Court decree was binding on McKinney since he was not a party to the action and since obscenity, vel non, was not permitted as an issue by the trial court.

The Mobile action was in personam and in rem. The magazine, "New Directions," the subject matter in this case, was one of the res declared by the court to be obscene. The decree of the court, which was not appealed, established the status of the res, and the decree as to the status of the res was conclusive against all the world as to that status. McCann v. Ellis, 172 Ala. 60, 55 So. 303 (1911). See Brennen v. Ellis, 173 Ala. 718, 55 So. 306 (1911); Jones v. Adler, 183 Ala. 435, 62 So. 777 (1913). See also Toole v. State, 170 Ala. 41, 54 So. 195 (1911), an in rem action against 114 barrels of beer for its condemnation where the court said the status of the property was to be fixed as to all the world.

The status of the res, "New Directions" being established, and there being no change in the standards of obscenity under the statute from the time of the Mobile hearing to the trial below, no evidence of obscenity, vel non, was required in this case.

■ The standards under our statute were the same ante *Miller* as they were post *Miller*. We conclude that McKinney, after due notice of the decree, was subject to criminal prosecution for selling material judicially declared obscene.

We note in passing what Mr. Justice Douglas said in his dissent in *Miller*:

"If a specific book, play, paper, or motion picture has in a civil proceeding been condemned as obscene and review of that finding has been completed, and thereafter a person publishes, shows, or displays that particular book or film, then a vague law has been made specific."

Justice Douglas contends that until there has been a civil proceeding placing the tract beyond the pale, there should be no criminal prosecution.

Affirmed.

MERRILL, HARWOOD, MADDOX and McCALL, JJ., concur.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and JONES, JJ., dissent.

HEFLIN, Chief Justice (dissenting):

The defendant in this case was charged with violating Title 14, Section 374(4), Alabama Code of 1940, as amended (Recompiled 1958). That section provides:

"Every person who, with knowledge of its contents, . . . sells . . . or has in his possession with intent to sell . . . any mailable matter known by such person to have been judicially found to be obscene under this chapter, shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than one year, and may be fined not more than two thousand dollars for each offense . . . ."

In defendant's trial before a jury, the allegedly obscene matter was entered into evidence, but the jury was charged that the only issue of fact for them to decide was whether the defendant sold material which had been judicially declared to be obscene. Thus there was no finding by the jury that the matter alleged to be obscene was obscene, and indeed no such determination could have been made under the trial court's charge.

In my opinion, the conviction of the defendant under the provisions of Section 374(4) set out above is constitutionally in-

valid in that the statutory procedure operates as a denial of due process of law because: (1) The defendant was denied his right to a trial by jury on a material element of an alleged offense, (2) the defendant was denied the protection of the burden of proof requirements in criminal cases, and (3) the defendant was denied his right of confrontation.

The procedure for obtaining a civil judicial determination of the obscenity of mailable matter is outlined in Sections 374(5)–374(16) of Title 14.

Without passing judgment on the constitutionality of the equity action itself, which is not here in issue, the operation of the statute can be summarized as providing the state an opportunity to have matter declared obscene and to obtain an injunction against *named respondents* prohibiting the sale or distribution of the offending matter by the *named respondents*. Section 374(12) purports to tie the injunction procedure to the punitive provisions of Section 374(4) which, in pertinent part, declares the sale or exhibition of mailable matter that has been judicially found to be obscene under Sections 374(5)–374(16) to be a misdemeanor.

While the legislature of this state has the power to declare certain acts criminal, this power is not unlimited. The state cannot punish as a crime, for example, acts which are specifically protected by the Constitution. Thus the state generally cannot make criminal the act of selling or exhibiting all books, photographs, drawings or other like matter because of the limitation imposed on the states by the First Amendment. Certain materials, however, because of their nature, have been held to lie outside the protective umbrella of the First Amendment. One class of matter which is not protected by the First Amendment is that which is said to be "obscene." Because obscene matter does lie outside the protective shield, the state's police power may be invoked to regulate such unprotected matter.

The regulation of obscene matter may take several forms, including criminal sanctions against those who traffic in it. For the criminal sanctions to be constitutionally permissible it is clear that there must be as a minimum some designated act such as a sale, exhibition, etc., of some unprotected (i. e., obscene) matter. The essential elements of the crime then are at least a (1) transaction involving (2) obscene matter. Each of these elements is a material ingredient without which there is no crime.

It is settled law that in a criminal prosecution the state must prove every essential element beyond a reasonable doubt. E. g., Piano v. State, 161 Ala. 88, 49 So. 803 (1909).

Whether the trier of fact is a judge alone or a jury, the burden is the same— every material element of the crime must be proved beyond a reasonable doubt. Where the right to a jury trial attaches, the right attaches to *every* element, and not just certain elements of the crime. In the case at hand, since the possible punishment was one year in jail and a fine of up to $2,000, there is no doubt that the defendant was constitutionally entitled to a jury trial. Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970).

In short, the state may make it a crime for a person to sell, exhibit, etc., obscene matter, but in prosecuting the person for that crime, the state must prove to a jury every element of the crime beyond a reasonable doubt.

Under this analysis, the infirmity of the statute becomes obvious. The state has attempted to circumvent the usual criminal process by using a civil judgment as conclusive proof of one essential element of the criminal act. (Injunctive proceedings were equitable until the new Alabama Rules of Civil Procedure went into force and effect. Now such proceedings are classified as non-jury under the merged one form of action. See Rule 2—ARCP.)

While it is conceded that there may be some set of circumstances under which such a procedure may be permitted, it cannot be utilized to prevent a criminal defendant from full enjoyment of his constitutional rights. In the case at bar, the statute operated to deny the defendant his right to a jury trial on the most essential element for which he may be condemned —i. e., the obscenity of the matter sold— and he was denied his right to the protection of the criminal burden of proof. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt . . . .")

Furthermore, there is still another constitutional defect to the procedure. In effect, the state is attempting to statutorily engraft the principles of res judicata and collateral estoppel in a criminal prosecution. While arguably this legislative attempt could be challenged as a violation of the doctrine of separation and unconstitutional under the Alabama Constitution, Art. 3, Sec. 43, see Broadway v. State, 257 Ala. 414, 60 So.2d 701 (1952) (no legislative competency to create a duty on the part of a court without exercising any discretion or judgment when a performance of that duty is an exercise of a judicial function), an even more obvious defect in the statute has been identified.

To permit the affirmative use of these concepts by the prosecution would violate another fundamental guarantee of the Bill of Rights—the right of confrontation. An excellent analysis of this problem is found in Hirsch & Ryan, I Know It When I Seize It: Selected Problems in Obscenity, 4 Loyola U.L.Rev. 9, 76–81 (1971). In the author's hypothetical situation the assumption is made that the state convicts A in X County for selling obscene matter. Since the threshold issue in A's case was the obscenity of the matter, A's conviction operates as a judicial determination of the obscenity of the matter. The authors' analysis continues:

"Subsequently, the People undertake prosecution of defendant B in Y county, or any number of defendants in numerous counties, concerning the identical material. The threshold issue is again the obscene nature of the identical material. The People may attempt to raise the prior adjudication on this element as the subsequent action(s) concerns the identical issue; there is a final adjudication on the merits by a court of competent jurisdiction; and the party against whom the adjudication is raised, the material, was a party to the prior adjudication . . . .

\*     \*     \*     \*     \*     \*

"Were these concepts operative in a vacuum of pure theory, independent of other considerations, the foregoing would seem to permit the prosecution's utilization of these concepts in subsequent proceedings. However, to permit such affirmative use of the concepts by the prosecution would affront one of the fundamental guarantees of the Bill of Rights—the right of confrontation.

"This guarantee was held applicable to the states in Pointer v. Texas [380 U.S. 400 [, 85 S.Ct. 1065, 13 L.Ed.2d 923] (1965)]. Under the instant facts, the People, through utilization of the prior in rem judgment of obscenity would, if permitted, supply the sine qua non of the in personam criminal proceedings merely by pleading that judgment and interposing the plea of collateral estoppel in answer to any defense attempt to litigate the issue of obscenity. The ultimate effect of such application would be to confront the defense with the core of the prosecutor's case, in documentary form with no provision for cross-examination or confrontation. Such procedures were early condemned indeed, were deemed of primary importance in the enactment of the Sixth Amendment.

"In relation to the concept of collateral estoppel, in a criminal proceeding, courts have been quite reluctant to allow

its application in a manner adverse to the defendant. This reluctance is admirably presented in what may be considered the two leading cases in the field. United States v. Carlisi [32 F.Supp. 479 (E.D.N.Y.1940)] stated the principle to be:

> In transplanting the doctrine . . . to criminal law . . . [a] prior adjudication with respect to an element of a subsequently tried offense is not binding upon the accused. This is so because the defendant, charged with crime, always has the right to have the jury or the triers of the facts determine anew every element of guilt.

United States v. De Angelo [138 F.2d [466] 486 (3d Cir. 1943)] emphatically restated the foregoing:

> An accused is constitutionally entitled to a trial de novo of the facts alleged and offered in support of each offense charged against him and to a jury's independent finding with respect thereto. *While the foregoing decisions considered the applicability of the concept in the realm of a subsequent prosecution of the defendant in a prior action, the rationale precluding application if negative to the defendant is even more compelling in proceedings directed against an individual not an actual party to a prior proceeding, the results of which compel him to defend an in personam criminal proceeding.*" (emphasis added) (Footnote omitted)

Furthermore, the case law of this state has long recognized the constitutional invalidity of using a previous civil action as res judicata in a subsequent criminal prosecution. In Helms v. State, 35 Ala.App. 187, 45 So.2d 170 (1950) Judge (now Justice) Harwood summarized this state's law:

> "[I]t is clearly settled by the doctrines of our cases that a judgment gained in a civil suit is not admissible against the defendant in a criminal prosecution growing out of the same transaction. Britton v. State, 77 Ala. 202. Converse-

ly, verdicts in criminal cases are not admissible in civil cases arising out of the same transactions. Carlisle v. Killebrew, 89 Ala. 329, 6 So. 756, 6 L.R.A. 617.

> "In Roden and Son v. State, 30 Ala. App. 229, 3 So.2d 420, 421, Justice Simpson stated that: 'A judgment in a civil case is not conclusive as res judicata in a criminal case, or vice versa, there being no mutuality of parties and a different degree of proof, respectively, being required.'

> "In 22 C.J.S., Criminal Law, § 50, the general rule, amply supported by authority, is states as follows: '* * * it is generally held that a judgment or opinion in a civil action, or the record of proceedings therein, is not admissible in a subsequent criminal prosecution involving the same matter.'

> "The reasons underlying the doctrine are that the parties are not the same; the penalties are not the same; the causes of action are different; the burden of proof is not the same; the rules of procedure are not the same, in that in a civil action the defendant may be forced to testify, while he cannot be compelled to do so in a criminal proceeding."

See also Jay v. State, 15 Ala.App. 255, 73 So. 137 (1916).

If a judgment in a civil suit ordinarily cannot be admitted in a criminal prosecution "arising out of the same transaction," can it conceivably be said that a judgment in a civil action in Mobile can be *conclusive* in a criminal prosecution in Birmingham, when the defendant was not even a party to the prior civil action? The answer is so clear as to make a response unnecessary.

In conclusion I would summarize my views in this manner: Our system of criminal justice demands that every person charged with committing a crime be convicted only after having been afforded due process of law. Due process is not variable with the degree of repulsiveness of the

**492**

crime. Murderers, rapists, kidnappers, and pornographers are entitled to the same element of the due process as embezzlers or pickpockets. These elements of due process include a jury trial on every element of the alleged crime, proof of guilt beyond a reasonable doubt and a right of confrontation. In my view, the provisions of Title 14, Section 374(4) invoked in this case deprives a defendant of all of these rights and thus must give way to the dictates of the Constitution.

I, therefore, respectfully dissent.

COLEMAN, BLOODWORTH and JONES, JJ., concur in the foregoing dissent.