299 So.2d 771

**Mamie Delores FUNCHES**

v.

**STATE.**

**1 Div. 405.**

Court of Criminal Appeals of Alabama.

June 25, 1974.

Rehearing Denied July 16, 1974.

---

Matranga, Hess, Sullivan & Stout, Mobile, for appellant.

**332**

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State, appellee.

TYSON, Judge.

The Grand Jury of Mobile County, Alabama, charged the appellant with the unlawful possession of Secobarbital Sodium, and also the unlawful possession of Codeine Phosphate in violation of the Alabama Uniform Controlled Substances Act.[1] The Jury found the appellant guilty as charged, and the trial court in its judgment set sentence at five years imprisonment in the penitentiary.

Mobile County Deputy Sheriff David Beck testified that he went to the home of the appellant, located at 652 Rickarby Street in Mobile, on July 26, 1972, pursuant to a search warrant issued by Paul W. Brunson, Judge of the Court of General Sessions of Mobile County. He stated that he arrived at the residence at about 6:45 p. m. He further testified that the official sunset on this date was at 7:48 p. m. He stated that he entered the bedroom at this residence in which the appellant slept, and from a bedside table seized several vials containing different capsules; that among those seized were the vials subsequently offered in evidence. Deputy Beck further stated that the appellant was not at home at the time of these seizures, but that he and another officer had knocked and presented the warrant to some three or four persons present at the time. He further stated that the appellant came to the Mobile County Jail that same evening to inquire about her nephew and to ask why her residence had been searched. Before questioning her, Deputy Beck read a "Miranda card" to her, and upon being advised that she fully understood her rights, the appellant, upon being shown the bag in which the several drugs seized had been placed, in essence made the following comments:

"A. When we first got up there, I asked her if she was the lady that lived at 652 Rickarby, and she said yes; she was.

I asked her if it was her house, she said yes; it was. I Asked her who lived there, and she said her and W. T. McKinley and a niece, I think, Miss—I can't remember her name now, the girl that answered the door when I approached the house with a search warrant, and several daughters or—several children there; and I asked her what bedroom she occupied. She said the front bedroom of the house. I asked her if the materials that were in the bag belonged to her, and she looked at them and she said, yes. And that's about the extent—we just . . . ."

1. Act No. 1407, 1971 Regular Session, now codified as Title 22, Sections 258(25)–258(60), Code of Alabama 1940, as amended.

Deputy Beck further testified that the vials containing the seized drugs were unmarked, without a prescription label or other indicia of the date and place of purchase.

State Toxicologist Nelson E. Grubbs testified that from his chemical analysis of the contents, one of the drugs was "Codeine Phosphate, the salt of Codeine," and the others were barbiturates, one of the barbiturates being known as seconal sodium, and the other known as amobarbital sodium, commonly called, "Tunial." Dr. Grubbs further testified that these drugs were controlled substances within the meaning of the Alabama Act requiring a prescription by a registered medical practitioner.

On cross-examination concerning the Codeine drug, Dr. Grubbs stated it was known as "Empirin No. 3, a pain killer."

The appellant's motion to exclude the State's evidence was overruled.

Betty Jean Holcomb, testifying for the appellant, stated that she had stayed at the appellant's home on several occasions prior to July 26, 1972, and that she had a prescription from Dr. LeBaron Foster for sleeping pills, which she left at appellant's home.

Miss Holcomb denied owning or having any knowledge of the Empirin No. 3 prescription.

The appellant, Mamie Delores Funches, testified that she resided at 652 Rickarby Street in Mobile, and owned this residence. She further stated that one of the drugs seized from her home on July 26, 1972, the "Tunial," were sleeping capsules, belonging to her friend, Betty Jean Holcomb. Mrs. Funches further stated that she had a prescription from Dr. Foster for the Empirin No. 3 compound for "headaches." On cross-examination concerning where she had this prescription filled, she stated, ". . . I deal with a lot of pharmacies, professionally, and I think on several occasions I went to Laddy's." She further stated that she was shown the pills in question at the County Jail, and that they had been removed from her bedroom in her home, though she denied stating to Deputy Beck that "all the pills were hers."

Further on cross-examination, when asked if she had a prescription for "barbiturates" at that time, she replied, "No, I don't think so. I would like to say this, they took all of the medicine out of my medicine cabinet."

Dr. LeBaron Foster testified that he was a practicing physician in Mobile, Alabama, and that the appellant was one of his patients. He further stated that he had been treating her for some three or four years and had given her a prescription for "Empirin Compound No. 3 as a pain killer." He further testified that he had given a "Tunial" prescription to Miss Betty Jean Holcomb, who was also a patient of his prior to July 26, 1972.

In rebuttal, the State called Pharmacist Eddie Lee Clements, who testified that he was employed at "Lincoln Drug Store" in Mobile, and had examined his prescription files for the two-year period prior to July 26, 1972; that he found no prescription on file for either Mrs. Mamie Delores Funches or Miss Betty Jean Holcomb; that he had specifically looked for prescriptions during the sixty-day period immediately preceding July 26, 1972, and found none for either woman at the drugstore. He further testified that Mrs. Funches and Miss Holcomb were regular customers of his drugstore.

Also, in rebuttal, the State presented the testimony of Barbara Jean Foster Glaude, who testified that she was a registered pharmacist and owned the Professional Pharmacy in the City of Mobile, which was in the same building as the office of her brother, Dr. LeBaron Foster. She further stated that she knew the appellant and also Miss Betty Holcomb, and that she had examined her files for the two-year period immediately prior to July 26, 1972, specifically, the sixty-day period immedi-

ately prior thereto, and found no prescriptions on file for either woman for the drugs in question.

2. The affidavit for search warrant in this cause is as follows:

**I**

The search warrant in question contains the following language :[2, 3]

"STATE OF ALABAMA  }  IN THE COURT OF GENERAL SESSIONS OF MOBILE COUNTY  
COUNTY OF MOBILE  }  CASE NO. _____  
AFFIDAVIT FOR SEARCH WARRANT

BEFORE Paul W. Brunson, Judge of the Court of General Sessions of Mobile County, personally appeared David E. Beck, Deputy Sheriff.

The undersigned being duly sworn deposes and says: That he has reason to believe that on the premises known as 652 Rickarby Street, Mobile, Alabama, a residence occupied by John Doe whose name is otherwise unknown, there is now being concealed certain property in the County of Mobile, namely:

Illegal Narcotics, to-wit: Heroin, which is in violation of Act #1407, Section 401, Regular Sessions, Alabama Legislature, Approved September 16, 1971 (Senate Bill 414).

And that the facts tending to establish the foregoing grounds for the issuance of a search warrant are as follows:

1. I have received information in the past several days from a reliable and creditable informer concerning the sale of Heroin at the above residence.

2. My informer is reliable because he has given me information in the past 2 months concerning Narcotics, which has led to arrests and convictions in the courts of Mobile County.

3. On July 25, 1972, my ibformer (sic) stated to me he was invited along with others to the above residence to take part in a large purchase of Heroin. Acting on this information, I personally parked accross (sic) the street from the above described residence and I personally saw my informer and segeral (sic) other persons enter these premises. My informer told me he did nat (sic) purchase any Heroin himself but he atated (sic) to me that one of these people that went into the residence did purchase a baloon (sic) of Heroin. My informer told me that this baloon (sic) was purchased for the sum of $100.00 and consisted of 10 capsules of Heroin.

4. My informer further told me he observed approximately 5 more baloons (sic) containing capsules of Heroin at the above residence.

I therefore request a search warrant to search these premises.

/s/ David E. Beck  
Signature of Affiant

/s/ Deputy Sheriff  
Official Title, if any

Sworn to before me, and subscribed in my presence, the 26th of July, 1972.

/s/ Paul W. Brunson  
Judge of the Court of General Sessions of Mobile County"

We are of the opinion that this affidavit is legally sufficient when tested by *Aguilar* and *Spinelli* standards. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Clenney v. State, 281 Ala. 9, 198 So.2d 293; Myrick v. State, 45 Ala.App. 162, 227 So.2d 448.

"You are hereby commanded to search forthwith the (place) named for the property specified, serving this warrant and making the search (in the daytime) and if the property be found there to seize it, leaving a copy of this warrant and a receipt for the property taken, and prepare a written inventory of the property seized and return this warrant and bring the property before me within ten days of this date, as required by law.

"Dated this 26 day of July 1972.

"/s/ Paul W. Brunson
Judge of the Court of General Sessions of Mobile County, State of Alabama."

The return to the above warrant shows that the same was executed at 7:20 p. m., July 26, 1972. The appellant contends that the warrant in question was not executed "in the daytime," as required by the language of the above warrant, and, further, that the time limitations pertaining to the execution of the search warrant, as set forth in Title 29, Section 220, Code of Alabama 1940, should be read into the provisions of Title 15, Section 107, Code of Alabama 1940.

In Jordan v. State, 39 Ala.App. 469, 103 So.2d 815, former Presiding Judge Harwood, speaking for the Court, stated the following:

"Under the provisions of Section 220, Title 29, Code of Alabama 1940, a search warrant, issued under the provisions of Sections 210, 211, 212, 213, and 214, Title 29, Code of Alabama 1940, may be executed only between the hours of eight o'clock in the morning and six o'clock in the afternoon, and Section 210, supra, as amended, provides that no evidence obtained by means of an illegal search of a private dwelling shall be admissible in the prosecution of any person for violating the provisions of Title 29, supra.

"However, under the general provisions relating to search warrants (Sections 101–107, Title 15, Code of Alabama 1940), a search warrant may be executed at any time, day or night, if issued on an affidavit stating positively that the property is in the place to be searched, and the magistrate authorizes a search during the day or night.

"These two sets of statutes relate to the same subject matter, I. e., search warrants, and have the same general purpose, i. e., the discovery of property used in committing a public offense. They are therefore in pari materia, and the one does not displace the other."

Deputy Beck testified that he arrived at the residence in question about 6:45 and concluded "our search about 7:20." He further testified that the official sunset occurred on July 26, 1972, at 7:48, according to official records kept for that date.

In discussing this same problem pertaining to execution of a search warrant in

An informer need not be shown to be reliable any particular number of times. Clenney v. State, 281 Ala. 9, 198 So.2d 293; Davis v. State, 46 Ala.App. 45, 237 So.2d 635, affirmed 286 Ala. 117, 237 So.2d 640; Bates v. State, 51 Ala.App. 338, 285 So.2d 501, cert. denied 291 Ala. 773, 285 So.2d 506.

3. Moreover, the affidavit in question was bolstered by the statement under oath by Deputy Beck, before Judge Brunson, as follows (R. p. 31):
"Q. All right; now did anything else occur that night that you told Judge Brunson about?

A. Yes, sir; I advised him that we had stopped a subject named Terry Lee Crawford. He was running out of the back of the house at 652 Rickarby; that we had procured a black attaché case with $10,641 in U. S. currency.
Q. From this individual?
A. Yes, sir; from Terry Lee Crawford." This procedure was specifically approved by this Court in Oliver v. State, 46 Ala.App. 118, 238 So.2d 916, and which case is dispositive of the issues set forth in the dissent of our Presiding Judge in the case at bar.

United States v. Liebrich, D.C., 55 F.2d 341, we find:

"In the Bible, Genesis, 1:5, we find 'And God called the light day and the darkness he called night.' Shakespeare said: 'When the searching eye of heaven is hid Behind the globe, and lights the lower world, Then thieves and robbers range abroad unseen, In murthers and in outrage boldly here.' The definition of night in Webster's Dictionary is: 'The time from dusk to dawn when no light of the sun is visible."

Further, from *Liebrich,* supra:

"It will be observed that through the ages it has been generally recognized that when it is light it is still daytime, and that when it is not light it is nighttime. It has also been generally recognized that light does not cease with the setting of the sun . . . . "

Moreover, this same problem is dealt with in State v. Cain, (Mo.App.) 31 S.W. 2d 559, 561:

"The term 'daytime' is defined in 17 C.J. 1134, 1135, where the leading cases are collated, as 'the time from the rising to the setting of the sun, and that portion of the time after the setting of the sun, or before its rising, during which there is sufficient natural light, other than moonlight, so that the countenance of a man may be distinguished.' The evidence taken on the motion to suppress disclosed that the search warrant was executed about 6:30 o'clock in the evening, the date being the 14th of April; that it was not dark, though after sundown; and that a man's features could be observed without the use of an artificial light. In view of this testimony, the court was warranted in finding that the warrant had been executed in the daytime; and the motion to suppress was therefore properly overruled." See also Volume 11, Words and Phrases, "Daytime."

It therefore follows that the appellant's objection to the evidence on the basis of the improper execution of search warrant was properly overruled.

## II

■ The appellant further contends that the State failed to prove a prima facie case, and that the overruling of his motion to exclude and his request for the affirmative charge was error.

The State established the ownership of the residence as being that of the appellant, and that the drugs in question were seized from a bedside table in the bedroom occupied by the appellant. Further, the vials in which the drugs were found lacked a prescription label of a registered pharmacy. A chemical analysis proved the drugs in question required the prescription of a registered medical practitioner.

Moreover, the appellant, when shown the bag in which the materials seized from her bedroom were placed, stated "they were hers."

It therefore follows that the rulings by the trial court in denying appellant's motion to exclude and her request for the affirmative charge were proper. Waldrup v. State, 52 Ala.App. 292, 291 So.2d 383, cert. denied 292 Ala. 756, 293 So.2d 828.

## III

■ The appellant contends that the refusal of Charges Nos. 6 and 8 were error, and that such were not covered by the oral charge of the court or other given charges. From the record:

"DEFENDANT'S          REQUESTED CHARGE NO. 6

"I charge you, members of the jury, if the jury upon considering all of the testimony, have a reasonable doubt about the Defendant's guilt, arising out of any

part of the evidence, they should find the Defendant not guilty.

.    .    .    .    .    .

"DEFENDANT'S          REQUESTED CHARGE NO. 8

"The Court charges the jury, if after considering all of the evidence in this case, that tending to show guilt, together with that tending to show innocence, there should spring up voluntarily in the minds of the jury from any part of the evidence a probability of the innocence of the Defendant, the jury must acquit her."

In the oral charge of the trial court, we find:

"The first and most salient principle that you must abide by in considering these is the time-honored and noted principle that every defendant in every criminal case is presumed innocent until proven guilty beyond a reasonable doubt and to a moral certainty.

"Now beyond a reasonable doubt and to a moral certainty are equivalent legal terms. They are interchangeable. Beyond a reasonable doubt is the same thing as to a moral certainty. Further, beyond a reasonable doubt would mean guilt beyond a reasonable doubt, not a speculative or conjectural doubt.

"I would charge you that if you have an abiding conviction of the guilt of the defendant, after hearing all of the evidence in the case, you would, in effect, be believing the defendant guilty beyond a reasonable doubt. If you do not have an abiding conviction of the guilt of this defendant after considering all of the evidence, you would not believe the defendant guilty beyond a reasonable doubt.

"So the burden is on the State to prove to you, as the Jury, beyond a reasonable doubt and to a moral certainty that this defendant is guilty of one of the two counts in the indictment. Failing to do that, you would be under a duty to acquit the defendant.

"You may arrive at a reasonable doubt in this case or in any criminal case from the evidence or from a lack of evidence. As I said, the term to a moral certainty would mean the same thing, legally, as beyond a reasonable doubt.

"You are bound by certain other principles relating to the evidence. The testimony of all of the witnesses is subject to the presumption that every witness is presumed to speak the truth when he takes the witness stand under oath. The law says you must reconcile the testimony of all of the witnesses with that of being the truth, unless you find that there are inconsistencies in considering all of the evidence. In that instance, you would have to determine what part of the evidence that is in conflict you shall believe, and what part you shall not believe."

It is clear that refused Charge No. 6 is covered by the above portion of the oral charge. Title 7, Section 273, Code of Alabama 1940. Buckelew v. State, 48 Ala. App. 411, 265 So.2d 195, cert. denied 288 Ala. 735, 265 So.2d 202.

The language of appellant's refused Charge No. 8, which was approved by the Supreme Court of Alabama in Wilson v. State, 243 Ala. 1, 8 So.2d 422, reads as follows:

"1. The Court charges the jury that if, after considering all the evidence in the case, that tending to show guilt, together with that tending to show innocence, there should spring up involuntarily in the minds of the jury from any part of the evidence, a probability of the innocence of the defendant, the jury must acquit."

In addition to adding the word "her" at the end of the charge, which was refused here as No. 8, additionally, refused Charge No. 8 uses the word "voluntarily" immedi-

ately following the words "should spring up," where the approved language, as set forth above in *Wilson,* supra, the word is *"in*voluntarily."

Moreover, the essence of this charge was covered in the oral charge of the trial court. Its refusal was therefore proper. McWilliams v. State, C.C.A., 1974, 52 Ala. App. 487, 294 So.2d 454, cert. denied, 1974, 292 Ala. 490, 294 So.2d 457.

We have carefully examined this record, as required by Title 15, Section 389, Code of Alabama 1940, and find same to be free from error. The judgment is due to be and the same is hereby

Affirmed.

ALMON and DeCARLO, JJ., concur.

CATES, P. J., and HARRIS, J., dissent.

CATES, Presiding Judge (dissenting).

I consider that present five-man court has not overruled the construction of Code 1940, T. 15, § 103, referred to in Brandies v. State, 44 Ala.App. 648, 219 So.2d 404; Tyler v. State, 45 Ala.App. 155, 227 So.2d 442; and Myrick v. State, 45 Ala.App. 162, 227 So.2d 448. In this last case we said:

"In Tyler v. State, 45 Ala.App. 155, 227 So.2d 442 (Oct. 7, 1969), we noted that Code 1940, T. 15, § 103 requires that each witness before the magistrate issuing the search warrant must have his testimony reduced to a written deposition to be subscribed by the witness. In that case, the magistrate had had other witnesses before him whose testimony was not put in writing.

"In the case of instant concern, there was but one witness so far as this record shows. The only infirmity in the affidavit which led to the issuance of the warrant was the failure of the affiant to expressly label his informer as one who had previously furnished reliable infor-

mation. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. Here, on examination in the circuit court, Camp, the affiant, testified that his informer had been previously shown to be reliable.

"In Knox v. State, 42 Ala.App. 578, 172 So.2d 787(10), we indicated that it was possible to supply the deficiencies in an affidavit if, in fact, additional oral evidence was laid before the issuing magistrate. In Brandies v. State, 44 Ala.App. 648, 219 So.2d 404, and *Tyler* we indicated that such oral evidence must, nevertheless, to the extent required by § 103 of T. 15, supra, be reduced to writing. Thus, from these three opinions, it can be deduced that there must be a written disposition for each witness before the issuing magistrate."

Since there was evidence before the issuing magistrate in the case sub judice which was not reduced to writing, I am impelled to respectfully dissent.