282 So.2d 75

**Lewis F. HUTTO**

v.

**STATE.**

**5 Div. 114.**

Court of Criminal Appeals of Alabama.

Aug. 28, 1973.

---

Charles M. Ingrum, Opelika, for appellant.

William J. Baxley, Atty. Gen., and George M. Van Tassel, Jr., Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Lee County, Alabama, indicted the appellant for possession of marihuana in violation of the Alabama Uniform Controlled Substances Act.[1] The Jury's verdict found appellant guilty and judgment set sentence at one year in the Lee County Jail.

Deputy Sheriff R. L. Watkins of the Lee County Sheriff's Department testified that on November 26, 1971, he, along with three other members of the Lee County Sheriff's Department and the Auburn Police Department, searched a two-story white block building, the "old Kappa Sigma house," located in Auburn at the southeast corner of the intersection of North Gay Street and East Glenn Avenue, facing on North Gay Street. The search commenced at 3:18 in the afternoon and lasted approximately one and one-half hours. This was pursuant to a warrant issued by Judge C. S. Whittelsey of the Court of Common Pleas. Both the Affidavit for Search Warrant, marked State's Exhibit No. 1, and the Search Warrant, marked State's Exhibit No. 2, were allowed into evidence over objection.

Deputy Watkins stated that he obtained the street address, "158 North Gay Street," from the records of the Alabama Power Company in Auburn. He further testified that the street number that appeared on the front of the building was 186 North Gay Street.

On hearing the pretrial motion to suppress on behalf of the appellant, it developed that Judge Whittelsey was one of the owners of the building in question, and had subleased the premises to one Peter Beasley, who took over as sublessee from Terry Gilbert in November, 1971. He stated that the monthly rental was $353.00 per month, and that he was a one-third owner of the building and collected the rent for all the owners.

Peter Beasley testified that part of the ground floor was used as a "Coffee House," another part was rented out as a bike shop, while a local newspaper rented another portion of the building, and that the second floor was rented out as a rooming house.

The motion to suppress, challenging the legal sufficiency of the search warrant, was overruled just before trial commenced.

Deputy Watkins testified that when they first arrived, he and Lt. Frank de Graffenried of the Auburn Police Department went to the front of the building. The door was unlocked, and they entered and were confronted with some five or six people in a common "living room" area just to the left of the front door. Watkins stated that he asked for Mr. Terry Gilbert, as named in the warrant, and was informed that he did not live at the residence and that he had not been seen for a month or so. He then asked who was in charge of the residence and received no answer. Watkins informed the entire group that he held a search warrant for the "residence" and that he was going to execute the search. The officers began the search with the upstairs portion of the building which had numerous rooms opening into a common hallway. The downstairs was being operated as a "Coffee House" and there was also a "Novelty Room" in a portion of the building.

Deputy Sheriff Jerry Popwell testified that he was present and helped conduct the search. He stated that he first saw appellant in a room on the north end of the building on the second floor. When he en-

1. Title 22, Section 258 (25-60), Code of Alabama 1940, as amended 1971.

tered the room he observed the appellant and a young lady in a sleeping bag on the floor. Popwell identified himself and advised appellant that he held a search warrant. The appellant stated, "We'll have to get dressed," and then pointed to a suitcase in the corner of the room saying, "Don't mess with that, I've got some valuables" or "Be careful with that, I've got some valuable art work in there." Popwell then searched the suitcase and found "vegetable matter," which was later identified as marihuana, scattered along the bottom of the suitcase. The suitcase also contained drawings, poems, and personal effects according to Popwell.

The young lady found with appellant testified that the appellant rented Room 10 on the second floor, but that they were in Room 16 when the officer came in. She stated that Room 16 was not rented and that it was used by various artists as a studio. She further stated that the suitcase the marihuana was found in was used by these artists to store their work in and that she did not know who owned it. According to the witness, at least thirty different people stored their work in the suitcase and she had also used it to store her own work.

Several other witnesses were introduced on behalf of the appellant and testified that they also had used the suitcase to store their art work.

The appellant took the stand and testified that he rented Room 10 for $15.00 a month, which he paid to Peter Beasley. He stated that other students rented some of the rooms on the second floor. He stated that the suitcase was not his, but when Officer Popwell walked in, he had said, "There's valuable art work in that suitcase . . . Please don't disturb it." He further testified that he had not used marihuana, nor had he seen marihuana used in the house.

I

Appellant's motion to suppress on the ground that the search warrant did not de-scribe the premises to be searched with sufficient clarity was denied by the trial court, as was the motion to exclude at the conclusion of the State's evidence.

The affidavit for search warrant and the search warrant read as follows:

"State of Alabama

County of Lee

Before me C. S. Whittelsey, Judge, Court of Common Pleas, Lee County, Alabama, personally appeared Investigator R. L. Watkins of the Lee County Sheriff's Dept. who being duly sworn, deposes and says that he has probable cause to believe that there is now being kept or concealed at the residence of Terry Gilbert, alias, at 158 North Gay Street, a white block building on the southeast corner of the intersection of North Gay Street and East Glenn Avenue facing North Gay Street, in Auburn, Alabama in Lee County, Alabama, Cannabis Sativa, Cannabis Indica, Cannabis Americana, Marihuana, or any compound or mixture thereof, which is contrary to the laws of the State of Alabama.

Sworn to and subscribed before me this the 26th day of November, 1971.

/s/ C. S. Whittelsey (Judge)
C. S. Whittelsey, Judge
Court of Common Pleas
Lee County, Alabama"

\*     \*     \*     \*     \*     \*

"SEARCH WARRANT

The State of Alabama

County of Lee

To any Sheriff, Deputy and/or Municipal Police:

Proof by affidavit having been made this day before me by Investigator R. L. Watkins that he has been reliably informed of activities that would cause a reasonable person to believe that Canna-

bis Sativa, Cannabis Indica, Cannabis Americana, Marihuana or any compound or mixture thereof is being kept or concealed at the residence of Terry Gilbert, alias, at 158 North Gay Street, a white block building on the southeast corner of the intersection of North Gay Street and East Glenn Avenue facing North Gay Street, in Auburn, Alabama, which is contrary to the laws of the State of Alabama.

You are hereby commanded to make immediate search on the person and premises of Terry Gilbert, alias, or any person or persons found on the premises of 158 North Gay Street, a white block building on the southeast corner of North Gay Street and East Glenn Avenue, said premises facing North Gay Street in Auburn, Alabama, in Lee County, Alabama, between the hours of 8:00 AM and 6:00 PM on November 26th, 1971, for the following property: Cannabis Sativa, Cannabis Indica, Cannabis Americana or any compound or mixture thereof, and if you find the same or any part thereof, to being [sic] it forthwith before me, at my office at Opelika, Lee County, Alabama.

Dated the 26th day of November, 1971.

/s/ C. S. Whittelsey (Judge)
C. S. Whittelsey, Judge
Court of Common Pleas
Lee County, Alabama"

\*   \*   \*   \*   \*   \*

"State of Alabama

County of Lee

vs.

Terry Gilbert, alias
158 North Gay Street
Auburn, Alabama,
Lee County, Alabama

BEFORE C. S. Whittelsey, Judge of the Court of Common Pleas, Lee County, Alabama

The undersigned being duly sworn deposes and says:

That he has reason to believe that (on the person of) or (on the premises known as) 158 North Gay Street, a white block building on the southeast corner of the intersection of North Gay Street and East Glenn Avenue said building facing North Gay Street, in Auburn, Alabama, in Lee County, Alabama, said premises being occupied by Terry V. Gilbert, alias, in Lee County, State of Alabama, there is now being concealed certain property, namely, Cannabis Sativa, Cannabis Indica, Cannabis Americana, Marihuana, or any mixture or compound thereof, which are contrary to the laws of the State of Alabama

(here give alleged grounds for search and seizure)

And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: I have been reliably informed that there is now being kept or concealed in the above described premises of Terry Gilbert, alias, Marihuana, and that said informant has seen Marihuana in said premises on several occasions. Informant has further advised affiant that he has seen Marihuana in said premises past night and as often as 2:00 PM this date. Said informant has given affiant information in the past and this information has proven reliable. Said informant has made a purchase of Marihuana from said described premises and after having had this sample checked at the State Toxicologist Dept. It was proven to be Marihuana. Said informant has given affiant information in the past two weeks that has proven correct and reliable.

(Signature of Affiant)
/s/ R. L. Watkins

(Official Title)
Investigator, Lee County
Sheriff's Dept.
Lee County, Alabama

Sworn to before me, and subscribed in my presence, November 26th, 1971

/s/ C. S. Whittelsey (Judge)

C. S. Whittelsey, Judge
of the Court of Common
Pleas
Lee County, Alabama"

The evidence showed that the actual address of the building was 186 North Gay Street and that was the number appearing on the face of the building. However, it appeared from the evidence that there was only one building on the southeast corner of North Gay Street and East Glenn Avenue.

Title 15, Section 102, Code of Alabama 1940, reads:

"A search warrant can only be issued on probable cause, supported by affidavit, naming or describing the person, and particularly describing the property, and the place to be searched."

█ Our courts have held that to comply with this statute, as well as the Fourth Amendment, it is enough if the description is such that the officer can with reasonable effort ascertain and identify the place intended, or if a prudent officer should thereby be able to locate the property definitely and with reasonable certainty from the face of the warrant. The description must be such that any person familiar with the locality can by inquiring identify the premises described. Tyler v. State, 45 Ala.App. 155, 227 So.2d 442.

█ Thus, the discrepancy in the street address on the face of the building and that appearing in the warrant is not such, standing alone, as to be sufficient to invalidate the warrant. United States v. Esters, D. C., 336 F.Supp. 214, and authorities therein cited. See also Annotation at 11 ALR 3d 1330 at 1345.

There is, however, a more serious problem concerning the validity of the search warrant. No indication appears on the face of the search warrant or in the affidavit in support thereof as to whether the building was a single or multiple dwelling, or the particular use being made of the building other than to refer to same as a "residence." In fact, the expression "the residence of Terry Gilbert" appears in the warrant.

We quote from the testimony of Deputy R. L. Watkins on direct examination:

"Q. Would you describe first the building itself and what you found as far as the contents and the people are concerned, in general?

"A. There were some, like I say, five or six people, at the time we first arrived in this common living room area. Officer Williams began at that time and stayed with these people; they were instructed to stay in this living room area. And some other uniformed officers came in and subsequently Officer Williams assisted us with the searching. We began in the upstairs portion of the house. The bottom portion is the living room area with an adjoining, two large adjoining rooms on the north wall, at that time were a coffee house and general kitchen area, a bedroom area with some bath and storage area on the right. It does have a basement on the south side, access to the basement on the south side. The south end of the house has access by stairs to the upper portion, which is more or less a dormitory type, with several rooms upstairs, numerous rooms upstairs with a common hall.

"Q. Now, downstairs, state whether or not there was any businesses being operated or appeared to be operated?

"A. There was.

"Q. What type of business?

"A. If I'm not mistaken, it was labeled with signs saying "Coffee House" and "Novelty Room" or something along this

line. This was on the north bottom portion of the house.

"Q. And I believe you said there were various rooms upstairs?

"A. There was.

"Q. Were these residential rooms or just what did you find generally in the rooms?

"A. Upstairs, generally, in the northernmost portion, including the entire hall area upstairs, was rooms for residence, or quartering. The south end of the residence, with the exception of one room, appeared to be office type rooms. There was some printing and photographic material, and so forth upstairs in the south end of the house. The north, or main, portion of the upstairs was sleeping area or sleeping quarters.

"Q. All right. And I believe you testified that house is in Lee County, Alabama?

"A. It is, yes, sir.

"Q. Now, also you testified that Deputy Popwell assisted you in the search of the house?

"A. He did.

"Q. Did he assist you in the search of the upper floors of the house?

"A. He did.

"Q. And, of course, the other officers assisted you also?

"A. They did. [R. 58–59]

. . . . . .

"Q. All right. Now, did you search other rooms of this house, also, Deputy Popwell?

"A. Yes, sir. As far as I know, we searched every room in the residence except for the basement, I didn't go into the basement.

"Q. Would you describe the appearance and contents of these rooms and what you found, if anything?

"A. As I recall, Mr. Wright, there were maybe four rooms that had padlocks on them, on the outside, and then there was maybe 14 or 15 rooms that were not locked. Some of the rooms just had trash piled in them and other rooms just had mattresses and then some, the ones with locks on them, appeared to be living quarters, had regular beds, clothes, and suitcases, luggage, and some books and stuff." [R. 65]

We are therefore concerned with whether the warrant, which fails to describe any particular apartment number, a room number, or other portion of the building meets the requirements of Title 15, Section 102, Code of Alabama 1940, and the Fourth Amendment of the United States Constitution that "no Warrants shall issue, [without] . . . particularly describing the place to be searched." The federal courts have long held that a general search warrant for an entire building, or floor of a building, occupied by different families or different tenants, is ordinarily null and void. Tynan v. United States, 297 F. 177 (9th Cir. 1924), cert. den. 266 U.S. 604, 45 S.Ct. 91, 69 L.Ed. 463.

In United States v. Diange, 32 F.Supp. 994 (D.C.1940), the search warrant being challenged described only a "dwelling house" whereas in the case at bar the warrant used the term "residence." In *Diange*, the government conceded that the structure contained two stories and was occupied and in the possession of two families, each family being in possession of a different part of the dwelling house. The Court there held that the description did not comply with the Fourth Amendment.

In United States v. Hinton, 219 F.2d 324 (7th Cir. 1955), the Court stated:

"For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no

different than searching two or more completely separate houses. Probable cause must be shown for searching each house or, in this case, each apartment. If such cause is shown there is no reason for requiring a separate warrant for each resident. A single warrant may cover several different places or residences in a single building. But probable cause must be shown for searching each residence unless it be shown that, although appearing to be a building of several apartments, the entire building is actually being used as a single unit.

"Federal courts have consistently held that the Fourth Amendment's requirement that a specific 'place' be described when applied to dwellings refers to a single living unit (the residence of one person or family). Thus, a warrant which describes an entire building when cause is shown for searching only one apartment is void. United States v. Barkouskas, D. C., 38 F.2d 837; United States v. Diange, D. C., 32 F.Supp. 994; United States v. Chin On D. C., 297 F. 531; United States v. Innelli, D. C., 286 F. 731; United States v. Mitchell, D. C., 274 F. 128. . . . "

In the instant case, the affidavit for search warrant is based on information from an anonymous informer who "has seen Marihuana in said premises."

The officer stated that he had been to the offices of the Alabama Power Company to obtain an address and the name of the lessee. This information was all placed before Judge Whittelsey, who was a part owner of the building in question and was the person who collected the rent in behalf of himself and the other two owners. Judge Whittelsey was also aware that the premises had been subleased to one Peter Beasley who took over the lease from Terry Gilbert. Beasley in turn leased out portions of the premises of the building as a "Coffee House," bike repair shop, and to a local newspaper. He rented rooms on the second floor to various individuals, including Room No. 10 to appellant.

Beasley further stated that on the second floor was a room, No. 16, which was used as a joint artist studio by a number of persons. It was this room where the officers found the appellant, Miss Mudd, and the suitcase in which the appellant and others placed "art supplies."

Further, Mr. Beasley testified that he was paying a rooming tax to the City of Auburn, Alabama, showing that a portion of the building was used as a rooming house, and that he had received from the City of Auburn a business license to operate the rooming house, and that he had also obtained a state and county license from Lee County.

■ It is apparent that the premises in question were being occupied by both commercial and residential tenants. The officers seeking the search warrant and the Inferior Court Judge issuing the warrant were aware of this. It is equally clear that the building in question was not being used as a "one family residence" and that the person named in the affidavit and warrant was the "original lessee" who no longer occupied any of the premises, and in fact such had been subleased. It is therefore clear that the affidavit and warrant are both invalid as failing to provide a more definite description of the subunit of the building sought to be searched, or of the room number within the said premises sought to be searched. Moreover, neither the affidavit nor warrant identifies the premises as being under the control of either the appellant or of the sublessee who in fact had control of the whole premises. Because of these deficiencies, we are of the opinion that the trial court committed error in not granting the motion to suppress the affidavit and warrant. See Annotation, 11 ALR 3d 1330, et seq.

We pretermit consideration of other assignments of error because of our holding

 

as herein set forth. For the reasons shown, the judgment of conviction is due to be reversed and the cause is hereby remanded.

Reversed and remanded.

All the Judges concur.