479 So.2d 1314 (1985)
Billy Joe FINCH
v.
STATE.
4 Div. 299.
Court of Criminal Appeals of Alabama.
May 14, 1985.
On Return to Remand October 8, 1985.
Rehearing Denied November 12, 1985.
*1315 Richard Waldrop, Enterprise, for appellant.
Charles A. Graddick, Atty. Gen., and Thomas K. Brantley, Asst. Atty. Gen., for appellee.
TAYLOR, Judge.
After a conviction of the offense of receiving stolen property in the first degree, in violation of § 13A-8-17, Code of Alabama 1975, Billy Joe Finch was sentenced as a recidivist to life imprisonment.

I
Finch contends that the court erred in denying his motion for an amendment of the trial transcript to show that the search warrant employed in this case had been altered. The evidence indicated that a search warrant was issued for a search of the premises at 317 West Watts Street, Enterprise, Alabama. The officers then proceeded to Finch's residence at 313 West Watts Street. Underneath the house they found two boxes of silver flatware which had been removed from the residence of a Mrs. Martin in Enterprise. It is contended that after the search and seizure, the search warrant was altered to indicate the address of the premises actually searched, 313 West Watts Street.
Appellant filed a motion for correction of the record by having copies of the affidavit and warrant made part of the record. This motion was denied. One of appellant's grounds for his motion to suppress the fruits of this search was that the premises searched were not the premises described in the documents. Applying Rule 10(f), Alabama Rules of Appellate Procedure, upon suggestion of appellant, we direct that this omission be corrected by adding to *1316 the record and transmitting to this court a copy of the affidavit and warrant which were the foundation of the search and seizure in this case. All other matters are reserved.

II
Appellant next contends that the trial court improperly considered a previous conviction of his under the Federal Youth Corrections Act. The record shows that the court did receive into evidence in this case three certified copies of prior convictions, including one under the Federal Youth Corrections Act. The record further shows that the state gave to Finch a document indicating an official notice that the state intended to offer under the Habitual Felony Offenders Act evidence of two prior convictions. Both of these prior convictions were convictions in the state court. On page 19 of the record, there appears a copy of "Notice of Intent to Proceed under Habitual Offender Act and Notice of Previous Convictions." This document gave notice to the defense that the state intended to rely on a conviction of receiving stolen property in 1972, case no. 4804 in the Circuit Court of Coffee County, Alabama, and a conviction of receiving stolen property in 1983, case no. CC-82-56 in the Circuit Court of Coffee County, Alabama. No mention is made of the federal offense, a certified copy of which was received into the record, as appears on page 22 of the record. It is apparent on the face of the record therefore, that the state failed to provide notice to Finch of its intent to rely on the federal conviction. Because this case is due to be returned to the trial court to supplement the record, we will not at this time address problems in sentencing, neither the consideration of the sentence as to which there was no notice nor the alleged shortcomings or discrepancies in the other convictions.
Accordingly, under the provisions of Rule 10(f), Alabama Rules of Appellate Procedure, it is directed that the circuit court supplement the record by adding thereto the copies of the original affidavit and warrant leading to the search of the appellant's premises.

ORDER TO SUPPLEMENT RECORD ISSUED.
All the Judges concur.

ON RETURN TO REMAND
TAYLOR, Judge.
This case was remanded to the Circuit Court of Coffee County because that court denied the appellant's Rule 10(f), A.R.A.P., motion to correct the record so that the affidavit and search warrant would become part of the record. In ordering that the record be supplemented, "We direct[ed] that this omission be corrected by adding to the record and transmitting to this court a copy of the affidavit and warrant which were the foundation of the search and seizure in this case." In accordance with our directions, the Circuit Court of Coffee County supplemented the record so that we now have before us a copy of the affidavit and search warrant.
The evidence is essentially undisputed. An Enterprise police officer received information from an informant that the appellant, Billy Joe Finch, had in his possession two wooden silver chests, one containing a set of silver-plated flatware and the other containing a set of gold-plated flatware. The description of the two cases of flatware and their contents matched a description of flatware stolen from a residence two days earlier on December 26, 1983. Immediately after receiving the information and after having corroborated the tip by questioning individuals to whom the appellant had supposedly attempted to sell the flatware, one police officer began watching the appellant's residence while the officer who had received the information from the informant obtained a search warrant. Both the affidavit and the search warrant stated that the stolen properly was in the possession of the appellant at his residence located "at 317 West Watts Street in the City limits of Enterprise, Alabama."
*1317 This officer testified that he knew the appellant and knew where the latter lived, and furthermore, that he had even been to the appellant's residence earlier in the week. Notwithstanding the officer's personal knowledge of the appellant's address, he erroneously advised the issuing magistrate that the appellant's address was 317 West Watts Street, when in fact, the house number was 313. "[E]vidently I made a mental error when I gave [the issuing magistrate] the address because Billy Joe Finch did at one time live at 317 and he had since moved into where his maw-in-law [sic] lived. There was two houses between the two." Nevertheless, he executed the search warrant knowing that the address authorized to be searched was incorrect; he knew that in the search warrant the appellant's residence was incorrectly identified as 317 West Watts Street instead of 313 West Watts Street.
"Q. But you went ahead and searched 313 having a warrant for 317?
"A. Uh-huh.
"....
"Q. There was no mistake in your mind knowing Billy Joe Finch's residence?
"A. The housethe mental error was on the number, but I knew the house.
"Q. I mean, you knew where 313 was?
"A. Yes, sir.
"Q. And you knew where 317 was where he used to live, but when you went to make the search you searched the house with a warrant that said 317 on it?
"A. Yes, sir."
When the officer made the return to the issuing magistrate, after executing the search warrant, he informed the judge about the incorrect house number. The judge then altered the affidavit and search warrant so that "317" was changed to "313".
The only disputed testimony was that when the officer presented the warrant to the appellant, the appellant testified that he told the officer before the search commenced that the house number was incorrect.
"Q. All right. Did they have a warrant to search your property?
"A. They didnot
"Q. They had a warrant?
"A. Right.
"Q. And did you receive a copy of the warrant?
"A. Not then. He give [sic] me one when he came up.
"Q. Did you see the warrant?
"A. I saw it.
"Q. What address was listed on the warrant?
"A. 317 West Watts Street.
"Q. And did you tell the officers that arrested you that that was not the same address that you lived at?
"A. That's right. I told them before they made the search.
"Q. What did they say?
"A. He ignored me.
"Q. Did he say anything at all?
"A. Nope. He just told me to give him the warrant, the copy of the warrant that I had. He asked me to give that back to him. And when they leftwas getting ready to leave, I asked him could I have a copy of it and he told me that after Ithey got through with me investigating and all he would give me a copy.
"Q. Okay. But the address on the warrant that was handed to you was not the same address where you lived?
"A. No, sir. It was 317.
"Q. It was 317. And you live at 313?
"A. 313 West Watts Street."
The officer, however, testified that the appellant did not tell him that he "had the wrong address as compared to the warrant."
On February 4, 1983, the district judge, who was the magistrate who had previously *1318 issued the search warrant and then altered it to reflect the correct address, held a preliminary hearing in this case. As a result of the hearing, the judge made the following entry: "Case on motion of State is hereby nol-prossed. The District Attorney, Danny Carmichael advises that there was an illegal search and seizure by police which would keep the district attorney from proving his case against defendant." Notwithstanding the nolle prosequi, on May 17, 1983, the Coffee County Grand Jury returned an indictment charging the appellant with receiving stolen property in the first degree. Thereafter, on February 7, 1984, the appellant's motion to suppress the fruits of the search was heard in the circuit court and denied the following morning. On February 9, 1984, immediately before trial, the judge granted the state's motion in limine to restrict the defense from mentioning the earlier proceedings in the district court. The state "contend[ed] that any redress that the defendant wants to seek concerning the affidavit or the warrant would be available on appeal." We now proceed to address the issue raised by the appellant"The search warrant that was used by the police officers as authority to search the appellant's residence and as authority to seize property located there was invalid inasmuch as the search warrant used incorrectly described the appellant's resident address."
The Fourth Amendment to the United States Constitution reads:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
The Fourth Amendment's prohibition, the requirement that a warrant particularly describe the place to be searched, is the law we must apply here. The same prohibition is contained in our State Constitution (Ala.Const. (1901), Art. I, § 5) and our State code (§ 15-5-3, Code of Alabama 1975). The particularity requirement may be satisfied "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended" to be searched, Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925), although it must be noted that the Fourth Amendment was not adopted to assist the authorities in their searches, but to protect the people. See also Neugent v. State, 340 So.2d 55, 57 (Ala.Cr.App.), cert. denied, 340 So.2d 60 (Ala.1976) ("[T]he description in a search warrant is sufficient if officers can, with reasonable effort, ascertain and identify the place to be searched. If a prudent officer is able to locate the property definitely and with reasonable certainty from the face of the warrant, the description is sufficient").
We have not found, nor have we been cited to, an Alabama case directly on point with the issue raised herein. The closest case is Hutto v. State, 50 Ala.App. 636, 282 So.2d 75 (Ala.Cr.App.1973). In that case, the description in the affidavit and the warrant of the building to be searched was as follows: "The residence of Terry Gilbert, alias, at 158 North Gay Street, a white block building on the southeast corner of the intersection of North Gay Street and East Glenn Avenue facing North Gay Street, in Auburn, Alabama in Lee County, Alabama...." The actual address of the building, and the number actually appearing on the face of the building, was 186 North Gay Street. "[T]he discrepancy in the street address on the face of the building and that appearing in the warrant is not such, standing alone, as to be sufficient to invalidate the warrant." Id., 50 Ala. App. 636, 282 So.2d at 79.
The State contends that Hutto is precedent for allowing the search of the appellant's residence. However, the reason the discrepancy in the house numbers in Hutto was not sufficient to invalidate the warrant was because "it appeared from the evidence that there was only one building on the southeast corner of North Gay Street *1319 and East Glenn Avenue." Ibid. Additionally, both the affidavit and the warrant in that case physically described the building to be searched as "a white block building". Neither the affidavit nor the warrant, as originally issued in the case sub judice, contains a description of the residence to be searched other than by the address 317 West Watts Street. In Hutto, a prudent police officer would have searched the proper building because of the building's physical description other than the street address, whereas in the present case, any police officer other than Officer Rainey would have complied with the face of the warrant and searched the appellant's former address, 317 West Watts Street. We can only conclude that no search warrant authorized searching appellant's house. The search warrant fails to particularly describe the place to be searched; the search violated the United States Constitution, the Alabama Constitution, and the Code of Alabama.
Furthermore, because the error in the identification of the address was due to the police officer's "mental error", and not an error on the part of the issuing magistrate, the good faith exception does not apply. See United States v. Leon, 468 U.S. ___, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and Massachusetts v. Sheppard, 468 U.S. ___, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).
Our decision is in conformity with those of other states that have encountered this issue. In Shedd v. State, 358 So.2d 1117 (Fla.Dist.Ct.App.1978), as in the instant appeal, one officer kept the house under surveillance while another officer secured a search warrant. The officer obtained a search warrant that described the property to be searched as "a house located at 5738 Blanding Boulevard, Jacksonville, Duval County, Florida...." The house actually searched was 6573 Blanding Boulevard. The warrant also contained a physical description of the residence as "a wood frame house, green in color with white trim" and with "a front porch facing Blanding Blvd." Such additional description was correct except that the house was "basically concrete block rather than wood frame." After obtaining the search warrant, the officer "went directly to Shedd's home ... and paid no attention to the address given in the warrant or to the numbers on the mailbox." Instead, the officer "relied on [his] independent knowledge of Shedd's home."
In reversing Shedd's conviction for receiving stolen property, the court stated that the "authority to search is limited to the place described in the warrant." Id., at 1118. More particularly, the court said:
"In a search warrant, the description of the place to be searched must be sufficient enough to point out the place to be searched to the exclusion of all others and on inquiry lead the searching officers unerringly to it. Jackson v. State, 87 Fla. 262, 99 So. 548 (Fla.1924).
"The search warrant here fails to do this. A search of a citizen's residence must be based on the description set forth in the warrant and not left to the discretion of an officer. In the case before us, an officer without independent knowledge would have searched an incorrect residence. This can and must be avoided. It can be avoided by obtaining an accurate description of the place to be searched, setting forth this description in the warrant, and then searching the place described in the warrant. The Constitution requires no less." Ibid. (Emphasis added.)
In People v. Royse, 173 Colo. 254, 477 P.2d 380 (1970) (en banc), police officers obtained a search warrant for "3043 East Fountain Apt. # 305." The actual address for the residence searched was 3043 Mallard Drive, Apt. # 305. The officer who conducted the surveillance and supplied the address "erroneously assumed the address of the apartment to be on East Fountain Boulevard because the yellow pages of the telephone book listed the address of the Normandy Apartments as `3000 E. Fountain Blvd. (at Mallard Dr.).'" Id., 173 Colo. at 256, 477 P.2d at 380. The court held that the "search and the resulting seizure... was clearly unlawful under this warrant and the trial court erred in not suppressing *1320 the evidence." Ibid. "[I]f the police officer executes a search warrant at a place not described in the warrant, the search and seizure is without any semblance of validity. A search of a place other than as is described in a search warrant is, in effect, a search without a warrant." Ibid. The appellant herein correctly makes this same argument.
An additional fact in the present case that was not present in Shedd, nor in Royse, and one that additionally mandates reversal, is that the officer knew that he was going to conduct a search of a house that was not authorized to be searched by the warrant he was to execute; he intentionally and not mistakenly executed a search warrant at "a place other than the place intended by the magistrate." W. LaFave, Search and Seizure, § 72 (1978).
Still further, other states have even encountered situations wherein a search warrant was amended after it was discovered that the house number in the warrant was incorrect. In State v. Yoder, 96 Idaho 651, 534 P.2d 771 (1975), police officers executed a search warrant for 1265 East Fourth North Street at 1275 East Fourth North Street. After the search concluded, one of the executing officers penciled through "65" and inserted "75". The court stated: "Initially, we note that an executing officer cannot correct or modify a warrant in the event of mistake. Since only a judicial officer may issue a warrant, it necessarily follows that only a judicial officer may alter, modify or correct a warrant.... Therefore, the alleged change was without effect." The court held that the search warrant obtained did not authorize the search of that appellant's premises.
In State v. Boniface, 26 Ariz.App. 118, 546 P.2d 843 (1976), the police officer contacted the issuing magistrate before he searched the incorrectly described premises. A search warrant had been issued for 309 22nd Avenue, and "[u]pon arriving at this address, the police officer who had prepared and filed the affidavit supporting the issuance of the search warrant determined that a mistake had been made as to the address and decided not to execute the warrant." Id., 26 Ariz.App. at 119, 546 P.2d at 844 (emphasis added). Instead, he contacted the issuing magistrate and had the address changed to 413 22nd Avenue. He then executed the warrant at the defendant's residence, which, unfortunately, was actually yet a different address, to-wit, 411 22nd Avenue. The court held that the search was improper, saying that "since the warrant in this case was executed upon a house which was not described in the warrant, it does, of necessity, violate the constitutional requirements previously set forth." Id., 26 Ariz.App. at 119-20, 546 P.2d at 844-45.
The appellee has presented the same argument that was made, and rejected, in State v. Yoder, suprathe officer never intended to search 317 West Watts Street, but from the outset planned on searching 313 West Watts Street, notwithstanding the address contained in the warrant; "[t]herefore, [appellee argues] the search in the instant case was not unreasonable under the Fourth Amendment." Appellee's brief, p. 3. Such a holding is tantamount to ignoring the protections of the Fourth Amendment, to-wit, the particularity requirement. "To describe the place to be searched with particularity as is required, certainly means that if the place has an established street address, and this is the only method of description utilized, the correct address, and only the correct address, will suffice. In our view, this is a self-evident constitutional requirement in those cases where search warrants utilize [only] street numbers and street names as a means of describing the place to be searched." People v. Royse, supra, 173 Colo. at 257-58, 477 P.2d at 382 (emphasis added).
Finally, the concluding words of Justice Faulkner in Lietz v. State, 291 Ala. 133, 279 So.2d 116 (1973), are apropos:
"Unless we enforce the restrictions of the Fourth Amendment and Article 1, § 5 of the Alabama Constitution on searches and seizures, an old saying will have to be revised. A man's home will *1321 no longer be his `castle', but, his `open house' for everyone with a shred of governmental authority who wants to come inside. This cannot be permitted."
We reverse the conviction herein.
OPINION EXTENDED; REVERSED AND REMANDED.
All the Judges concur.